UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATHAN RIENSCHE, individually and on behalf of all the members of the class of persons similarly situated,<br><br>                                    Plaintiffs,<br><br>v.<br><br>CINGULAR WIRELESS LLC, a Delaware limited liability company, d/b/a Cingular Wireless, NEW CINGULAR WIRELESS SERVICES, INC., a Delaware corporation, d/b/a AT&T Wireless, NEW CINGULAR WIRELESS SERVICES PURCHASING COMPANY, L.P., a Delaware limited partnership, d/b/a Cingular Wireless, and NEW CINGULAR WIRELESS PCS, LLC, a Delaware limited liability company, d/b/a Cingular Wireless,<br><br>                                    Defendants. | No.  C06-1325Z<br><br>ORDER |

**BACKGROUND**

Plaintiff Nathan Riensche filed a class action against Cingular Wireless, LLC ("Cingular") alleging breach of contract and violation of the Washington Consumer Protection Act, RCW 19.86 et seq., ("CPA") for failure to disclose, charging and collecting a Business and Occupation Tax Surcharge to its wireless customers.  Compl., docket no. 1.

Mr. Riensche became a Cingular wireless customer in 2004.  Bennett Decl., docket no. 6, ¶ 3.  He activated his service through Cingular's online e-store.  Id.  See also Riensche

ORDER   -1-

1 Decl., docket no. 14, ¶ 3.  Before proceeding to checkout, Mr. Riensche was presented with

2 Terms of Service[1] ("Terms").  Id.  He did not read the Terms.  Riensche Decl., ¶ 3.

3 However, he was required to indicate his agreement to the Terms before proceeding to

4 checkout.  Bennett Decl., ¶ 3.  As a standard custom, Cingular mails all new customers a

5 Welcome Kit, including a copy of the Terms, which contains an arbitration provision.  Id.,

6 ¶ 5, Ex. A.

7      Mr. Riensche upgraded his service through Cingular's online store on July 17, 2006.

8 Bennett Decl., ¶ 6, Ex. B.  In the process of completing the upgrade, he had to indicate that

9 he accepted the Terms, and was sent a new Welcome Kit containing a copy of the Terms.  Id.

10 Mr. Riensche says he does not recall receiving a copy of his "service agreement" when he

11 received his phone and manual, neither in 2004 nor in 2006.  Riensche Decl., ¶¶ 4-5.

12 However, Mr. Crosetto has submitted an excerpt from Mr. Riensche's 2006 Welcome Kit,

13 Crosetto Decl., docket no. 13, ¶ 8.  Cingular has submitted evidence that the terms of service

14 were also included in that Welcome Kit.  Bennett Decl., Ex. B.

15      Defendant Cingular now brings this Motion to Compel Arbitration, docket no. 5.

16 ## ANALYSIS

17      The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides that an arbitration

18 provision in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds

19 as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This section of

20 the FAA is "a congressional declaration of a liberal federal policy favoring arbitration

21 agreements, notwithstanding any state substantive or procedural policies to the contrary."

22 Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  Thus,

23 district courts must compel arbitration where a valid agreement to arbitrate exists.  See

24 Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  The

25

26     [1] The Terms presented in the online store were the same, or substantially the same, as those Mr. Riensche received in his Welcome Kit.  Bennett Decl., ¶ 3.

1  party resisting arbitration has the burden of proving that the arbitration agreement is

2  unenforceable.  See Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91-92 (2000).

3      State law governs questions of validity and enforceability of an arbitration agreement.

4  Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987); Tricknor v. Choice Hotels, Intern., Inc., 265

5  F.3d 931, 936-37 (9th Cir. 2001).  Washington law also favors enforcement of arbitration

6  agreements.  Adler v. Fred Lind Manor, 153 Wn.2d 331, 341 n.4 (2004).  On appeal, a

7  district court's denial of a motion to compel arbitration is reviewed de novo.   Al-Safin v.

8  Circuit City Stores, Inc., 394 F.3d 1254, 1257 (9th Cir. 2005).

9      **A.    Lack of Agreement**

10      Mr. Riensche contends that he did not enter an agreement to arbitrate with Cingular

11  because (1) he did not read the agreement online, and he does not recall receiving the

12  agreement in the mail; and (2) he thought the arbitration agreement was unconscionable and

13  unenforceable, based on his involvement in a prior lawsuit against AT&T Wireless Services

14  ("AWS"), which was purchased by Cingular.  See Schnall v. AT&T Wireless Services, Inc.,

15  KCSC No. 02-2-05776-4 (August 15, 2003), Noonan Decl., docket no. 7, Ex. D (ruling that

16  AT&T's arbitration agreement was unconscionable and unenforceable).

17      Although Mr. Riensche claims he did not intend to enter into an arbitration agreement,

18  he does not specifically deny that he agreed to Cingular's Terms.  Cingular submits evidence

19  that Mr. Riensche was required to agree to the Terms online on two separate occasions, and

20  that Mr. Riensche was mailed a copy of the Terms following each of those transactions.

21  Bennett Decl., ¶¶ 3-6.  Mr. Riensche is incorrect that his decision not to read the Terms

22  absolves him from any obligation to be bound by those Terms.  See Michak v. Transnation

23  Title Ins. Co., 148 Wn.2d 788, 799 (2003) (parties are bound to the contracts they sign,

24  regardless of whether they have actually read or understood them).  Furthermore, Mr.

25  Riensche does not deny that he received a copy of the Terms by mail, but rather that he does

26  not *recall* receiving one.  Under Washington law, evidence that a copy of the Terms is

1    mailed to all customers is business custom evidence that is "admissible and relevant to prove

2    or disprove the existence of a contract." Lowden v. T-Mobile, 2006 WL 1009279 at *3

3    (April 13, 2006) (citing Industrial Electric-Seattle, Inc. v. Bosko, 67 Wn.2d 783, 797

4    (1966)) (evidence that signed agreements are required before service will be provided is

5    evidence of the existence of a contract).

6           Finally, Mr. Riensche contends that he believed the agreement to arbitrate was

7    unenforceable, based on a ruling that a previous agreement he had with AT&T Wireless, Inc.

8    was unenforceable in Schnall.  However, Mr. Riensche admits he did not read his new

9    arbitration agreement when he renewed his contract with Cingular in 2004 and 2006, and

10   thus has no basis for his contention that he believed it was unenforceable.  Therefore, Mr.

11   Riensche is bound by the provisions of the arbitration agreement to the extent the agreement

12   is enforceable.

13          **B.     Waiver**

14          Mr. Riensche contends that Cingular has waived its right to arbitrate by removing this

15   case to federal court.  Pl.'s Resp., docket no. 12, at 6.  He argues that removal constitutes

16   forum shopping and that Cingular has prejudiced him by delaying the adjudication of his

17   claims.  Id.  A party waives its right to arbitrate when (1) the party knows of its right to

18   arbitrate; (2) the party acts inconsistently with that right; and (3) another party is prejudiced

19   by those inconsistent acts.  Adler v. Fred Lind Manor, 153 Wn.2d 331, 362 (2004); 9 U.S.C.

20   §§ 1-16.  In Adler, the Washington Supreme Court held that the defendant had not waived its

21   right to arbitrate when it first attempted to resolve the dispute through mediation, and then

22   filed a motion to arbitrate promptly after filing its answer to the complaint.  153 Wn.2d at

23   362.

24          Cingular promptly filed its Motion to Compel Arbitration on September 21, 2006,

25   seven days after the removal of this case.  Cingular has not acted inconsistently with its right

26   to arbitrate and removal has not prejudiced Mr. Riensche.  See Adler, 153 Wn.2d at 362;

1   United Computer Systems, Inc. v. AT & T Corp., 298 F.3d 756, 765 (9th Cir. 2002).

2   Therefore, the Court concludes that Cingular has not waived its right to arbitrate.

3           **C.      Legal Effect of Parrish v. Cingular Wireless, LLC**

4           The California Court of Appeal has held a materially identical arbitration agreement

5   unenforceable under California law.  Parrish v. Cingular Wireless, LLC, 2005 WL 2420719,

6   No. A105518 (Cal. App. October 03, 2005), cert denied, 126 S.Ct. 2353 (2006).  Parrish

7   held the arbitration agreement unconscionable because its class action waiver operated as an

8   exculpatory clause under California law.  Id. at *6 (citing Discover Bank v. Superior Court,

9   30 Cal. Rptr. 3d 76, 89 (2005)).  Mr. Riensche argues that his materially identical agreement

10  to arbitrate with Cingular cannot be enforced in light of Parrish.

11          **1)      "Null and Void" Clause**

12          Mr. Riensche argues that, following Parrish, the arbitration provision is "null and

13  void" on its own terms.  Pl.'s Resp. at 11.  The provision here, as in Parrish, requires the

14  consumer to

15                  agree that the arbitrator may not consolidate proceedings or more
                    than one person's claims, and may not otherwise preside over
16                  any form of a representative or class proceeding, and that if this
                    specific proviso is found to be unenforceable, then the entirety of
17                  this arbitration clause shall be *null and void*.

18  Crosetto Decl. at 24 (emphasis added).  Mr. Riensche argues that this clause is not limited to

19  situations where the waiver is unenforceable as to him specifically, or even a particular

20  jurisdiction.  Pl.'s Resp. at 11-12.  Rather, he argues, the clause acts to nullify all materially

21  identical agreements in all jurisdictions, once the "specific proviso" is held unenforceable by

22  any court.  Id.  He compares Cingular's use of the phrase "this specific proviso [waiving

23  class actions]" with T-Mobile's use of "your waiver of your ability to pursue class or

24  representative claims," arguing that T-Mobile's agreement limits the invalidating effect to

25  individual consumers, while Cingular's does not.  Id.

26

ORDER  -5-

1   Cingular's view is that "[t]he provision is intended to void the arbitration provision if

2   the class action waiver provision, as applied to Mr. Riensche, is held to be unenforceable."

3   Def.'s Reply, docket no.15, at 5.  The Court agrees.  There is nothing in the agreement

4   showing that the parties intended this provision to do anything other than preclude severance

5   of the class action prohibition from the arbitration clause.  Therefore, the Court concludes

6   that Parrish does not render the agreement between Mr. Riensche and Cingular "null and

7   void".

8   ### 2)  Collateral Estoppel

9       Mr. Riensche contends that Cingular is collaterally estopped from enforcing its

10  arbitration agreement because the Parrish court held a materially identical agreement

11  unenforceable.  Pl.'s Resp. at 14.  Cingular argues that collateral estoppel does not apply,

12  because the issue in Parrish was not identical to the issue in this case.[2]  Def.'s Reply at 4-5.

13  To assert collateral estoppel, Mr. Riensche must prove the following four elements:

14          (1) the issue decided in the prior adjudication is identical with the one
            presented in the second action; (2) the prior adjudication must have ended in a
15          final judgment on the merits; (3) the party against whom the plea is asserted
            was a party or in privity with the party to the prior adjudication; and (4)
16          application of the doctrine does not work an injustice.

17  Nielsen v.  Spanaway General Medical Clinic, Inc., 135 Wn.2d 255, 263 (1998).  Because

18  Mr. Riensche cannot prove the first element, he cannot assert collateral estoppel.

19      The issue in Parrish is not identical, because Parrish applied California contract law in

20  finding the provision unconscionable.  Washington law concerning the unconscionability of

21  contracts differs from that of California.[3]  See Luna v. Household Finance Corp. III, 236 F.

22  _____

23      [2] Cingular is incorrect that this Court's enforcement of the arbitration agreement as to
    some claims in Peck v. Cingular Wireless, LLC, No. 06-00343, "undercuts Mr. Riensche's
24  argument."  Def.'s Reply at 4 n.6.  The facts in Peck differed significantly from the facts of the
    present case.  Mr. Peck was a former employee of Cingular, and only the arbitration agreement
25  relating to claims arising under Mr. Peck's *employee* calling plan was enforced.  Minute Order,
    Peck v. Cingular Wireless, LLC, No. 06-00343, docket no. 21 (June 12, 2006).

26      [3] Mr. Riensche argues that the Ninth Circuit has found that California and Washington
    definitions of substantive unconscionability are the same such that a contract clause found

ORDER   -6-

1  Supp. 2d 1166, 1174 (2002).  Washington law concerning the unconscionability of

2  arbitration agreements containing a class action waiver is currently unsettled.[4]  Even if the

3  substantive law were the same, the "context rule" requires that a court consider the

4  circumstances of an individual arbitration agreement in interpreting its terms, and such a

5  contextual analysis is necessary to determine whether or not an agreement is unconscionable.

6  See Adler v. Fred Lind Manor, 153 Wn.2d 331, 351 (2004); Tjart v. Smith Barney, Inc., 107

7  Wn.App 885, 895 (2001).

8         Therefore, the Court concludes that collateral estoppel does not apply, because the

9  applicable law and the circumstances surrounding the agreement in Parrish differed from

10  those in the present case.

11         **D.     Federal Preemption**

12         Cingular argues that any ruling by this Court "finding that Cingular's arbitration

13  provision must allow for class-wide arbitration to be enforceable would be preempted by the

14  FAA, both because Section 2 of the FAA would expressly preempt such a ruling and because

15  it would be in conflict with the FAA."  Def.'s Mot. to Compel, docket no. 5, at 12.  Cingular

16  relies on case law that does not support its argument.[5]  In fact, the authorities Cingular cites

17

18  ─────────────────

19  unconscionable as a matter of law under California law is also unconscionable under
   Washington law.  See Al-Safin v. Circuit City Stores, Inc., 394 F.3d 1254, 1261 (9th Cir. 2005)

20  (citing California, federal, and Washington cases in holding that an arbitration agreement in an
   employment contract was substantively unconscionable under Washington law).   This is

21  incorrect.  Although Washington and California courts define substantive unconscionability in
   the same fashion, they are not bound to the same interpretation of that definition.

22
       [4] Cingular notes three King County superior court cases that have enforced agreements

23  similar to Cingular's.  Udlinek v. AT&T Wireless Servs., Inc., No. 04-2-04745-5 (June 9, 2004);
   Scott v. Cingular Wireless No. 04-2-04205 (Sept. 10, 2004); Drake v. AT&T Corp., No. 04-2-

24  36050-1 (Sept. 8, 2005).   The Washington Supreme Court is currently deciding whether
   arbitration agreements containing a class action waiver are per se unconscionable.  Scott v.

25  Cingular Wireless, No. 77406-4 (Oral Argument heard on Feb. 28, 2006).

26       [5] Cingular correctly points out that Mr. Riensche fails to meaningfully respond to its
   preemption argument.  Def.'s Reply at 12.  However, Cingular's argument that the FAA
   preempts state law governing unconscionability is clearly erroneous.

ORDER   -7-

1  show that unconscionability is a traditional common-law defense that is applicable to all

2  contracts and not in conflict with the FAA.

3      It is well-settled that the FAA does not preempt general principles of state contract

4  law.  "[Arbitration] clauses may be revoked upon 'grounds as exist at law or in equity for the

5  revocation of any contract.'"  Southland Corp. v. Keating, 465 U.S. 1, 17 (1984).

6  "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may

7  be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]."

8  Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).  "Despite the 'liberal federal

9  policy favoring arbitration agreements,' state law is not entirely displaced from federal

10  arbitration analysis."  Tricknor v. Choice Hotels Intern., Inc., 265 F.3d 931, 936–37 (9th Cir.

11  2001) (quoting  Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 81 (2000)).

12      The Ninth Circuit has repeatedly rejected the argument that the FAA preempts rulings

13  that refuse to enforce unconscionable arbitration clauses.[6]  See, e.g., Ting v. AT&T, 319 F.3d

14  1126 (9th Cir. 2003); Ingle v. Circuit City Stores, Inc., 328 F.3d 1165 (9th Cir. 2003);

15  Circuit City Stores, Inc. v. Adams, 279 F.3d 889 (9th Cir. 2002); Bradley v. Harris Research,

16  275 F.3d 884, 889-90 (9th Cir. 2001).

17      Cingular contends that the Court may not consider the consumer nature of the

18  agreement in determining whether the arbitration agreement is unconscionable.  The Ninth

19  Circuit has held that the FAA preempts state laws that apply uniquely to other types of

20  contracts, in addition to laws that apply uniquely to arbitration agreements.  Bradley v.

21  Harris Research, 275 F.3d 884, 889-90 (9th Cir. 2001) (holding that a state law that applied

22  only to forum selection clauses and franchise agreements was preempted by the FAA); Ting

23

---

24  [6] Cingular's reliance on Iberia Credit Bureau, Inc., v. Cingular Wireless, LLC, 379 F.3d
    159, 167 (5th Cir.2004), is likewise unpersuasive.  Iberia discusses at length the applicability
25  of state law contract principles to arbitration agreements, emphasizing that courts "must exercise
    care in enforcing state doctrines of unconscionability to invalidate arbitration clauses."  Id. at
26  170.  Iberia applied governing state cases regarding the unconscionability of arbitration
    agreements, noting that these cases did not "single out arbitration clauses for especially strict
    scrutiny."  Id.

v. AT&T, 319 F.3d 1126, 1148–49 (9th Cir. 2003) (holding that a state consumer protection statute that would bar class-actions was preempted by the FAA because it applied only to consumer contracts).

However, Bradley specifically noted that *unconscionability* is a "generally applicable contract defense" that is not preempted by the FAA.  275 F.3d at 890 n. 7.  Similarly, Ting held that the application of the state law principle of unconscionability was not preempted by the FAA, ultimately holding that the arbitration agreement at issue was unconscionable.  319 F.3d at 1147-52.  Because the Court must consider the totality of the circumstances, Luna, 236 F.Supp. at1183, and whether the contract limits remedies available to consumers, Ting, 275 F.3d at 1149-52, the Court may consider the consumer nature of the agreement without invoking the preemptive effect of the FAA.[7]

**E.  Enforceability of the Arbitration Agreement**

The Court now considers whether the arbitration agreement between Mr. Riensche and Cingular is valid and enforceable.  Under Washington law, a contract is unenforceable if it is substantively unconscionable, even if it is procedurally conscionable.  See Adler v. Fred Lind Manor, 153 Wn.2d 331, 346-47.  Some courts have held that a finding of either procedural or substantive unconscionability is sufficient to render a contract unenforceable.  See Tjart v. Smith Barney, Inc., 107 Wash.App. 885, 898 (2001) (recognizing that a contract

---

[7] Cingular also implies that the court may not invalidate the arbitration agreement while enforcing the remainder of the contract.  Def.'s Mot. to Compel at 6.  Cingular relies on a quotation from Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 281 (1995), which Cingular has taken out of context:

> States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause.

513 U.S. at 281 (emphasis on sentence omitted by Defendant Cingular).  When read in context, these words stand for the principle that courts may invalidate an arbitration clause where there are grounds to do so, and may not invalidate one simply because it is an arbitration agreement. Absent intent to the contrary, unenforceable arbitration clauses are severable.  Graham Oil Co. v. ARCO Products Co., 43 F.3d 1244, 1248 (9th Cir. 1994).

ORDER   -9-

1   may be unenforceable based on procedural unconscionability only).

2               **1) Procedural Unconscionability**

3        Under Washington law, an arbitration agreement is procedurally unconscionable if

4   one party lacked meaningful choice in entering the contract.  <u>Zuver v. Airtouch</u>

5   <u>Communications, Inc.</u>, 153 Wn.2d 293, 303-304 (2004).  In determining whether there was

6   meaningful choice, courts consider "all the circumstances surrounding the transaction,"

7   including (1) "[t]he manner in which the contract was entered," (2) "whether each party . . .

8   [had] a reasonable opportunity to understand the terms of the contract," and (3) whether "the

9   important terms [were] hidden in a maze of fine print."  <u>Williams v. Walker-Thomas</u>

10   <u>Furniture Co.</u>, 350 F.2d 445, 449 (1965), <u>cited with approval in</u> <u>Zuver</u>, 153 Wn.2d at 303-

11   304; <u>Adler v. Fred Lind Manor</u>, 153 Wn.2d 331, 345 (2004); <u>Nelson v. McGoldrick</u>, 127

12   Wn.2d 124, 131 (1995); <u>Schroeder v. Fageol Motors, Inc.</u>, 86 Wn.2d 256, 260 (1975);

13   <u>Lowden v. T-Mobile</u>, 2006 WL 1009279 at *4.  These three factors should not be applied

14   mechanically without regard to whether meaningful choice actually existed.  <u>Zuver</u>, 153

15   Wn.2d at 760 (quoting <u>Schroeder</u>, 86 Wn.2d at 260).  The Court now considers each of these

16   factors to determine whether meaningful choice existed under the circumstances of this case.

17             **a.**        **Manner in Which the Contract was Entered**

18        The agreement between Mr. Riensche and Cingular was a contract of adhesion,

19   because it was a standard form contract prepared by Cingular and offered to customers, who

20   were required to accept it on a "take it or leave it" basis.  <u>See</u> <u>Zuver</u>, 153 Wn.2d at 304.

21   While weighing in favor of finding procedural unconscionability, the fact that the agreement

22   is an adhesion contract does not, by itself, render it procedurally unconscionable.  <u>Id.</u> (citing

23   <u>Yakima Fire Prot. Dist.</u>, 122 Wn.2d 371, 393 (1971)).  <u>See also</u> <u>Adler</u>, 153 Wn.2d at 348;

24   <u>Walters v. A.A.A. Waterproofing, Inc.</u>, 120 Wn.App.354, 362 (2004); <u>Mendez v. Palm</u>

25   <u>Harbor Homes, Inc.</u>, 111 Wn.App. 446, 459 (2002); <u>Luna v. Household Fin. Corp.</u>, 236

26   F.Supp.2d 1166, 1175 (W.D.Wash. 2002).

ORDER   -10-

1    Mr. Riensche contends that he lacked meaningful choice because, "as the <u>Parrish</u>

2    court found, 'there are no meaningful alternatives available' for consumers." Pl.'s Resp. at

3    17 (quoting <u>Parrish</u>, 2005 WL 2420719 at *5). If no meaningful alternatives were present in

4    the market, that could weigh against a finding that Mr. Riensche had a meaningful choice.

5    However, Cingular submits evidence showing that some wireless carriers may not require

6    customers to arbitrate or to waive class proceedings. Noonan Decl., Exs. E, F. Furthermore,

7    Mr. Riensche fails to cite, and the Court is not aware of, Washington legal authority

8    discussing the legal effect of a lack of market alternatives in determining procedural

9    unconscionability.

10    Mr. Riensche contends that he lacked meaningful choice because he had to enter

11    personal information into a form on Cingular's website before the Terms were presented to

12    him. Pl.'s Resp. at 3. However, the terms were presented to Mr. Riensche at a point when

13    he still had an option whether or not to complete his transaction. Therefore, the Court

14    concludes that the presentation of the terms after he entered some personal information, but

15    before he agreed to complete the transaction, did not deprive Mr. Riensche of meaningful

16    choice.

17                    **b.       Reasonable Opportunity to Understand the Terms**

18    Mr. Riensche suggests that the agreement is procedurally unconscionable based on a

19    time-out feature on Cingular's website, which causes the website to expire, requiring the

20    customer to re-type his personal information, if there is no computer activity for 15 minutes.

21    Pl.'s Resp. at 3. However, Mr. Riensche submits no evidence showing that he felt pressured

22    into agreeing to something he did not understand based on the time-out feature. As Cingular

23    points out, a customer may take as long as he wishes to review the agreement, then re-enter

24    his personal information at a later time.

25    Furthermore, if Mr. Riensche realized that he no longer agreed with the terms after he

26    had placed his order, he could have cancelled his service. The 2004 Welcome Kit notifies

1   the customer of a 15-day return policy in the event he does not accept the terms and

2   conditions, Bennett Decl., Ex. A at 12, and the 2006 Welcome Kit describes a 30 Day

3   Cancellation Policy, id., Ex. B at 31, which allows customers to cancel without paying the

4   early termination fee.

5       Next, Mr. Riensche contends that he lacked meaningful choice because the agreement

6   was "incomprehensible." Pl.'s Resp. at 17.  Near the top of the contract, it says, "This

7   Agreement requires the use of arbitration to resolve disputes and also limits the remedies

8   available to you in the event of a dispute." Crosetto Decl. at 22.  On the third page of the

9   print-out version, the text reads, "ARBITRATION Please read this carefully.  It affects your

10  rights." Id. 24.  The agreement informs the customer of the option for either party to pursue

11  a claim in small claims court. Id.  The agreement gives the web address for the American

12  Arbitration Association ("AAA"), if the customer wants information about the arbitration

13  rules. Id.  The agreement clearly indicates that the customer will be required to arbitrate, and

14  Mr. Riensche was allowed an unlimited time period in which he could have consulted

15  counsel or otherwise clarified the meaning of the terms.

16      Mr. Riensche had a reasonable amount of time to review the terms of the agreement.

17  He had an option to cancel his service without paying an early termination fee, if he decided

18  he did not agree with the terms after receiving his phone and Welcome Kit.  The terms of the

19  agreement clearly require arbitration of disputes.  Therefore, the Court concludes that Mr.

20  Riensche had a reasonable opportunity to understand the terms of the agreement.

21              **c.    "Maze of Fine Print"**

22      Mr. Riensche contends that the agreement is procedurally unconscionable because the

23  terms are presented in "a four-page solid block of text in fine print with no paragraph or

24  other section breaks." Pl.'s Resp. at 3.  See Crosetto Decl. at 22-25.  He also suggests that

25  the font used was difficult to read and "a signal to the average viewer that the content is not

26  necessary to read." Id. at 3 n.2.

The consumer is given the option of reading the terms and conditions online, or printing them out.  <u>See</u> Crosetto Decl. at 17, 22-25.  Online, the terms are presented in Courier font, in a window that requires the reader to scroll down to read more than the first few lines of the agreement.  <u>See</u> <u>id.</u> at 17.  The arbitration notice and arbitration provision are not visible without scrolling down.  <u>Id.</u>  The "printable" version is in a sans serif font and prints onto four pages, without section breaks.  Crosetto Decl. at 22-25.  In either case, all the terms, including the arbitration provision, are typed in the same size, legible font.

Following his online transactions, Mr. Riensche was provided with another copy of the arbitration agreement in his 2004 and 2006 Welcome Kits.  In the 2004 Welcome Kit, the terms were presented in a two-page block of small text.  Bennett Decl., Ex. A at 11.  The arbitration provision was about two-thirds down the second page and was signaled by the word "ARBITRATION" in all capital letters, but not set off by a section break.  <u>Id.</u>  In the 2006 version, the arbitration provision was set off by a section break and the boldface heading, "ARBITRATION."  Bennett Decl., Ex. B at 34.

In each version of the agreement, there is a notice near the beginning of the agreement: "This agreement requires the use of arbitration to resolve disputes and . . . limits the remedies available to you in the event of a dispute."  <u>See</u> Bennett Decl., Ex. A at 10, Ex. B at 31; Crosetto Decl. at 22.

However, in none of the versions is this notice in "the very first sentence of the Agreement" as Cingular claims.  <u>See</u> Def.'s Reply at 7.  In the online version, the customer has to scroll down in order to see this notice.  Crosetto Decl. at 17.  In the version the customer can print out at home, it begins in the tenth line of the text.  In the 2004 Welcome Kit, it is the third line (fourth sentence) of the agreement.  In the 2006 Welcome Kit, it appears on the bottom half of a page; the top half is labeled "Wireless Service Agreement," and the bottom half begins the four-page "Wireless Terms of Service."

1    Cingular contends that "Washington courts have not found procedural

2    unconscionability when arbitration agreements are far less conspicuous than Cingular's."

3    Def.'s Reply at 8.  The Court finds this statement unfounded, because Cingular relies on two

4    cases where the arbitration was decidedly more conspicuous than in the present case.  In

5    Adler v. Fred Lind Manor, 153 Wn.2d 331 (2004) the court held that the important terms of

6    an arbitration agreement were not hidden in a maze of fine print, where the agreement was a

7    short, half-page agreement, which was clearly labeled "**Arbitration Agreement**" in

8    "boldface type and normal font," and the first sentence of the agreement stated that

9    arbitration would be the exclusive dispute resolution mechanism.  153 Wn.2d at 349-50.  The

10   arbitration provision in Adler was more conspicuous than the one at issue here, which is

11   buried in the middle of a four page block of text[8] and is not mentioned in the first sentence of

12   the agreement.  Similarly, in Lowden v. T-Mobile, 2006 WL 1009279 (April 13, 2006),

13   Judge Pechman of this District held that an arbitration agreement was not procedurally

14   unconscionable, where "the typeface [was] relatively small, [but] arbitration provisions

15   [were] not hidden in a 'maze of fine print.'"  In Lowden, however, the provisions were

16   "clearly labeled 'Mandatory Arbitration'" and referenced just above the signature line.  2006

17   WL 1009279 at *4.  In the present case, the word "ARBITRATION" is in all capital letters,

18   but it is in the middle of the text and not clearly noticeable.  There is no notice of mandatory

19   arbitration visible near the box the customer checks to indicate "I agree," which is the online

20   equivalent to a signature line.  Therefore, the Court concludes that Adler and Lowden do not

21   prevent this Court from finding Cingular's agreement procedurally unconscionable.

22       However, under Washington law the use of small print in a standard form agreement

23   does not necessarily render it procedurally unconscionable, even where the provision is not

24   set apart by section breaks.  See Planet Ins. Co. v. Wong, 74 Wn.App. 905, 915 (1994) (the

25

26       [8] The Court notes that in the last version Mr. Riensche received, with his 2006 Welcome
     Kit, the arbitration provision is set apart by a section break. See Bennett Decl. at 34.

ORDER   -14-

1  use of small print on back of standard form did not render provision unconscionable, where

2  there were no section breaks and provision began with a heading in all capital letters).  See

3  also PEMCO v. Hertz Corp., 59 Wn.App. 641, 642 (1990) (the use of small, but not fine,

4  print does not render agreement unconscionable).  The fact that the arbitration provision

5  begins with the word "ARBITRATION" in capital letters militates against finding procedural

6  unconscionability.  Furthermore, Mr. Riensche had a heightened awareness of the possibility

7  of arbitration agreements in wireless telephone contracts, based on his previous lawsuit

8  against AT&T.  See Schnall v. AT&T Wireless Services, Inc.,  KCSC No. 02-2-05776-4

9  (August 15, 2003), Noonan Decl., docket no. 7, Ex. D.

10          **d.      Conclusions Regarding Procedural Unconscionability**

11          Having considered all the circumstances surrounding the transaction, the Court

12  concludes that Mr. Riensche had a meaningful choice.  Although the provision was a

13  standard form agreement in small print, several factors militate against procedural

14  unconscionability: the arbitration provision was mentioned early in the agreement; the

15  provision began with the word "ARBITRATION" in all capital letters; Mr. Riensche was

16  presented with the terms prior to completing his online transactions; he received a printed

17  copy with his 2004 and 2006 Welcome Kits, and was given the option to cancel without a

18  termination fee within several days of receiving it; the 2006 Welcome Kit contained a copy

19  of the agreement with the arbitration provision set off by a section break; and Mr. Riensche

20  had a heightened awareness of the possibility of arbitration.  Therefore, the arbitration

21  agreement is not unenforceable on the basis of procedural unconscionability.

22          **2) Substantive Unconscionability**

23          "Substantive unconscionability involves those cases where a clause or term in the

24  contract is alleged to be one-sided or overly harsh . . . ."  Adler, 153 Wn.2d at 344 (quoting

25  Schroeder, 86 Wn.2d at 260).  "'Shocking to the conscience,' 'monstrously harsh,' and

26  'exceedingly calloused' are terms sometimes used to define substantive unconscionability."

1   Id. (quoting Nelson, 127 Wn.2d at 131).  See also Zuver v. Airtouch Commc'ns, Inc., 153

2   Wn.2d 293, 303 (2004).

3       Mr. Riensche contends that the arbitration provision is substantively unconscionable

4   because it (1) mandates the use of AAA rules that bar discovery; (2) mandates fee and cost

5   sharing if the arbitrator finds the consumer's claim "improper or unwarranted;" (3) bars a

6   prevailing consumer from receiving an award of fees and costs, if the award is less than the

7   demand; (4) allows Cingular to unilaterally change the terms of the agreement; (5) prohibits

8   class or representative proceedings; and (6) limits remedies available to consumers.

9                           **a.      Discovery Under the AAA Rules**

10      The arbitration agreement provides, that "arbitration shall be governed by the

11   Commercial Dispute Resolution Procedures and the Supplementary Procedures for

12   Consumer Related Disputes (collectively, "AAA Rules")."  Crosetto Decl. at 24.  The AAA

13   Rules do not bar discovery, as Mr. Riensche contends.  To the contrary, the AAA Rules

14   provide for hearings, exchange of documents, and presentation of evidence.  Supp. Noonan

15   Decl., docekt no. 16, ¶ 4, Ex. C at 28, ¶ C-6; Ex. D at 45-46.  Disputes under $10,000 "shall

16   be resolved by submission of documents, *unless any party requests an oral hearing, or the*

17   *arbitrator determines that an oral hearing is necessary.*"  Id. at 45 (emphasis added).  Under

18   the AAA Rules, the arbitrator may direct parties to produce documents and to identify

19   witnesses.  Id. at 40.

20      In Lowden v. T-Mobile, Judge Pechman rejected the argument that the potential

21   limitation of discovery by an arbitrator is a basis for substantive unconscionability.  See

22   Lowden, 2006 WL 1009279 at *8-9.  The Washington Supreme Court in Zuver held that "the

23   effect of the attorney fees provision . . . [was] purely speculative," because the court could

24   not speculate upon how the arbitrator would interpret the provision, thus it was not

25   substantively unconscionable.  Zuver, 153 Wn.2d at 311-12 (citing PacifiCare Health

26   Systems, 538 U.S. 401, 406-407 (2003).  Likewise, this Court may not speculate as to

1   whether an arbitrator would limit discovery in a dispute between Cingular and Mr. Riensche.

2   Therefore, the provision regarding use of the AAA Rules is not substantively

3   unconscionable.

### b.   Fee and Cost Sharing

5       The arbitration agreement provides that,

> [e]xcept as otherwise provided herein, Cingular will pay all AAA
> filing, administration and arbitrator fees for any arbitration
> initiated in accordance with the notice requirements above.  If,
> however, the arbitrator finds that either the substance of your
> claim or the relief sought in the Demand is improper or not
> warranted, as measured by the standards set forth in Federal Rule
> of Civil Procedure 11(b), then the payment of all such fees shall
> be governed by the AAA Rules.  In such case, you agree to
> reimburse Cingular for all monies previously dispersed by it that
> are otherwise your obligation to pay under the AAA Rules.

Mr. Riensche contends that this provision is substantively unconscionable, because it

"requires that the consumer agree to pay the fees and costs in such circumstances," rather

than leaving the allocation of fees and costs to the court. Pl.'s Resp. at 4.

        However, this provision does not require a consumer to pay Cingular's attorneys' fees

and costs.  Rather, it provides that Mr. Riensche will have to reimburse Cingular for the fees

it has paid on his behalf, if the arbitrator finds that his claim violates Fed. R. Civ. P. 11(b).

The amount of these fees is governed by the consumer fee schedule in the AAA Rules.

        For claims less than $10,000, the AAA Rules provide that the consumer's share of the

fees may not exceed $125.  See Supp. Noonan Decl. ¶ 4, Ex. C at 29.  However, "if the

consumer's claim or counterclaim is non-monetary, then the consumer must pay an

Administrative Fee in accordance with the Commercial Fee Schedule." Id.  The consumer

must also deposit one-half of the arbitrator's compensation," any unused portion of which is

refunded. Id.  The Commercial Fee Schedule requires an initial filing fee of $3,250 for each

claim or counterclaim filed, and a case service fee of $1,250 for each case that proceeds to its

first hearing. Id. Ex. D at 49.  These fees are in addition to arbitrator compensation. Id.

Therefore, if the claim or demand violates Fed. R. Civ. P. 11(b), and the consumer has

ORDER   -17-

1  requested an injunction, the consumer would be liable for a minimum of $3,250 plus half of

2  the actual cost of arbitrator compensation.[9]

3        Mr. Riensche contends that this provision violates Fed. R. Civ. P. 11(c), because the

4  arbitrator does not have discretion to require the consumer to pay the fees or not.  Pl.'s Resp.

5  at 4 n.7.  Fed. R. Civ. P. 11(c) provides that "the court may . . . impose an appropriate

6  sanction" upon parties who have violated Rule 11(b).  However, the requirement that a

7  consumer who has violated Fed. R. Civ. P. 11(b) pay his own fees according to the AAA

8  Rules is not equivalent to sanctions under Fed. R. Civ. P. 11(c), because the provision merely

9  negates the preceding provision, in which Cingular agrees to pay the consumer's fees in

10  cases where the claim or demand is frivolous.  Therefore, the provision requiring consumers

11  who violate Fed. R. Civ. P. 11(b) to pay their own arbitration fees is not substantively

12  unconscionable.

13                    **c.    Attorneys' Fees**

14        Cingular's agreement provides that "[i]f the arbitrator grants relief to you that is equal

15  or greater than the value of your Demand, Cingular shall reimburse you for your reasonable

16  attorneys' fees and expenses incurred for the arbitration."  Mr. Riensche contends that this

17  provision is substantively unconscionable because it prohibits an arbitrator from awarding

18  attorneys' fees if the award is even five dollars less than the demand.  Cingular contends that

19  this provision "does not preclude an arbitrator from awarding the same relief that a court

20  could award," even if the award was less than the demand.  Def.'s Reply at 10.  While

21  Cingular is correct that the language of the provision does not expressly bar such an award,

22  the language is unclear and invites interpretations such as Mr. Riensche's.  Nonetheless, this

23  provision is ambiguous.  Therefore, because the Court may not speculate that an arbitrator

24  will interpret this provision "in a manner that casts [its] enforceability into doubt," <u>Zuver</u>,

25  _____

26        [9] Cingular erroneously claims that "the most that a consumer ever must pay under the
AAA Rules" is $125.  Def.'s Reply at 11.  This is only true for *monetary* claims that do not
exceed $10,000.

153 Wn.2d at 311 (quoting PacifiCare Health Systems, 538 U.S. 401, 406-407 (2003)), this provision is not substantively unconscionable.

### d.      Cingular's Right to Change the Agreement

Mr. Riensche contends that the agreement is unenforceable because Cingular reserves the right to unilaterally change the terms of the agreement.  However, the agreement provides "that if Cingular makes any change to this arbitration provision . . . you may reject any such change and require Cingular to adhere to the language in this provision."  Crosetto Decl. at 24.  Therefore, this provision does not render the agreement illusory or substantively unconscionable.

### e.      Class Action Prohibition

Mr. Riensche contends that Cingular's arbitration agreement is substantively unconscionable because it prohibits all class proceedings.  The agreement provides that the consumer and Cingular agree to bring individual claims only, "and not as a plaintiff or class member in any purported class or representative proceeding."  Two recent decisions in this district support Mr. Riensche's contention.

In Luna v. Household Finance Corp. III, 236 F.Supp.2d 1166, Judge Lasnik held that an arbitration clause prohibiting class actions was substantively unconscionable because it was being used "as a sword to strike down access to justice instead of a shield against prohibitive costs."  236 F.Supp.2d at 1179 (quoting Mendez v. Palm Harbor Homes, Inc., 111 Wn.App. 446, 465 (2002)).  Following the reasoning of Luna, Judge Pechman held that class action prohibitions in two wireless telephone contracts were substantively unconscionable, because the prohibitions "deprive[d] Plaintiffs of the means to effectively vindicate their rights under the CPA," and the provisions were "effectively one-sided because there is no conceivable set of facts under which T-Mobile would bring a class action against

ORDER  -19-

1    its consumers."[10]  Lowden v. T-Mobile, 2006 WL 1009279 at *6.

2         Cingular argues that a waiver of class action remedies in an arbitration agreement

3    does not render the contract unconscionable.  Indeed, some Washington courts have enforced

4    arbitration provisions that prevent class relief.  See, e.g., Heaphy v. State Farm Mut. Auto.

5    Ins. Co., 117 Wn.App. 438, 447 (2003); Stein v. Geonerco, Inc., 105 Wn. App. 41, 49 n.1

6    (2001) (citing Garmo v. Dean, Witter, Reynolds, Inc., 101 Wn.2d 585, 590 (1984)).

7    However, as Judge Pechman noted in Lowden, "neither Heaphy nor Stein addressed the

8    unconscionability of class action prohibitions, but instead rested their holdings on the

9    plaintiffs' failures to 'demonstrate a conflict with statutory provisions, contract law, or due

10   process requirements.'"  2006 WL 1009279 at *6 (citing Heaphy, 117 Wn. App. at 447;

11   Stein, 105 Wn. App. at 50).

12        Here, as in Luna and Lowden, the class action prohibition is a one-sided provision

13   that only benefits Cingular.  The class action prohibition effectively prevents consumers from

14   seeking redress whenever the monetary value of the claim is so small that it is not worth the

15   time or money to pursue in small claims court or arbitration, while allowing Cingular to

16   allegedly "cheat large numbers of consumers out of individually small sums of money."  See

17   Discover Bank v. Superior Court, 30 Cal. Rptr. 3d 76, 87 (2005).  Even though Cingular

18   agrees to pay the fees and costs of arbitration, the class action prohibition "serves as a

19   disincentive . . . to avoid the type of conduct that might lead to class action litigation."  Id. at

20   84.  This contravenes Washington public policy favoring the availability of class actions as a

21   mechanism for enforcing the CPA.  See Dix v. ICT Group, Inc., 125 Wn. App. 929 (2005)

22

23

24        [10] Cingular argues that Lowden was incorrectly decided, because it was "based on the
     'consumer' nature of the claims at issue and the fact that 'an individual consumer has so little
25   at stake that she is unlikely to pursue her claim.'" Def.'s Mot. to Compel at 12 (quoting Lowden,
     2006 WL 1009279 at *6).  As discussed previously, the consumer nature of the claims is merely
26   one fact in the Court's consideration of the totality of the circumstances, and the FAA does not
     preempt a ruling that takes this fact into account.

1    (holding that a forum selection clause requiring consumers to litigate in a forum that

2    prohibited class actions was unenforceable).

3           Cingular correctly notes that mutuality of obligation in a contract does not require

4    both parties to have identical requirements.  Zuver, 153 Wn.2d at 317.  However, Zuver held

5    that a remedies limitation provision was substantively unconscionable, because it was

6    unilateral; it only applied to Zuver.  Id. at 318-19.  Specifically, it "blatantly and excessively

7    favor[ed] the employer in that it allow[ed] the employer alone access to a significant legal

8    recourse."  Id.  See also Adler, 153 Wn.2d at 357-58 (holding that a 180-day limitations

9    provision in an employment arbitration agreement was substantively unconscionable because

10   it unreasonably favored employer).  Here, the class action prohibition does not affect

11   Cingular, because there is no circumstance under which Cingular would bring a class action

12   against consumers.  But it deprives consumers of an important means for enforcing their

13   rights under the CPA.  The class action prohibition is unilateral and excessively favors

14   Cingular, and is therefore substantively unconscionable.

15                        **f.        Limitation of Remedies**

16          Mr. Riensche contends that the arbitration agreement is substantively unconscionable

17   because it limits remedies available to consumers under the CPA.  The CPA provides that

18                  any person who is injured . . . by a violation of [the CPA] may
                    bring a civil action in the superior court to enjoin further
19                  violations, to recover the actual damages sustained by him or her,
                    or both, together with the costs of the suit, including a reasonable
20                  attorney's fee, and the court may in its discretion, increase the
                    award of damages to an amount not to exceed three times than
21                  actual damages sustained . . . .

22   The agreement provides that "[t]he arbitrator may award injunctive relief only in favor of the

23   individual party seeking relief and only to the extent necessary to provide relief warranted by

24   that party's individual claim."  Crosetto Decl. at 24.  This limitation is substantively

25   unconscionable for the same reasons that the class action prohibition is unconscionable.  The

26   limitation on injunctive relief is one-sided and overly harsh to consumers, because it limits a

1  remedy available to consumers under the CPA, which Cingular would never seek.  In the

2  event that an arbitrator found that Cingular violated the rights of an individual consumer

3  under the CPA, the arbitrator would be barred from enjoining Cingular from continuing the

4  violative practice as to other consumers.  The Court concludes that the limitation excessively

5  favors Cingular and is therefore substantively unconscionable.[11]

6  **F.      Severability**

7  "Courts are generally loathe to upset the terms of an agreement and strive to give

8  effect to the intent of the parties."  Zuver, 153 Wn.2d at 320 (citing Tanner Electric Coop. v.

9  Puget Sound Power & Light Co., 128 Wn.2d 656, 674 (1996)).  The arbitration agreement

10  provides that if the class action prohibition "is found to be unenforceable, then the entirety of

11  this arbitration clause shall be null and void."  Because this Court concludes that the class

12  action provision is substantively unconscionable, the Court also concludes that the arbitration

13  clause in this agreement is null and void.

14  **G.      Stay of Proceedings**

15  The question whether Cingular's class-arbitration waiver is unconscionable, and

16  therefore unenforceable, under Washington law is currently pending before the Washington

17  Supreme Court in Scott v. Cingular Wireless, LLC, No. 77406-4.  The Court declines to stay

18  this action pending the Scott decision.  If Scott holds that the class action waiver in

19  Cingular's arbitration agreement is enforceable, this Court can reconsider its ruling.

20

21  _____

22  [11] Mr. Riensche also contends that the agreement prohibits an award of treble damages.  In each instance where Mr. Riensche claims that the agreement bars treble

23  damages, he does not specify what language in the agreement prohibits treble damages. See Pl.'s Resp. at 4, 9, 19.  Cingular contends that the agreement does not prohibit an

24  arbitrator from awarding treble damages.  The agreement does not expressly prohibit treble damages.  If an arbitrator were to interpret the agreement as barring treble

25  damages, it would be unconscionable for the same reasons the general injunction is unconscionable.  However, because the agreement is ambiguous, the Court may not

26  speculate that an arbitrator will interpret this provision "in a manner that casts [its] enforceability into doubt," Zuver, 153 Wn.2d at 311 (quoting PacifiCare Health Systems, 538 U.S. 401, 406-407 (2003)).

ORDER   -22-

1

## CONCLUSION

2      Mr. Riensche is bound by the service agreements to which he agreed in online

3   transactions in 2004 and 2006.  Cingular did not waive its right to compel arbitration by

4   removing this case to federal court.  The ruling by a California court that an arbitration

5   agreement materially identical to that at issue here was unenforceable does not render the

6   agreement between Mr. Riensche and Cingular null and void, and Cingular is not collaterally

7   estopped from litigating the enforceability of the agreement.  The FAA does not preempt a

8   finding of substantive unconscionability under general doctrines of state contract law.  The

9   arbitration agreement is not procedurally unconscionable, because Mr. Riensche had a

10  meaningful choice whether to enter into the transactions.  However, the class action

11  prohibition and limitation on the availability of a general injunction are substantively

12  unconscionable under Washington law.  Defendant Cingular's Motion to Compel

13  Arbitration, docket no. 5, is DENIED.

14      IT IS SO ORDERED.

15      DATED this 27th day of December, 2005.

16

17      _____
        Thomas S. Zilly
18      United States District Judge

19

20

21

22

23

24

25

26