1

2

3

4

5

6

7    UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF WASHINGTON
8              AT SEATTLE

9

10   NATHAN RIENSCHE, individually and on
     behalf of all the members of the class of
11   persons similarly situated,                          No.  C06-1325Z

12                      Plaintiffs,

13   v.                                                    ORDER

14   CINGULAR WIRELESS LLC, a Delaware
     limited liability company, d/b/a Cingular
15   Wireless, NEW CINGULAR WIRELESS
     SERVICES, INC., a Delaware corporation,
16   d/b/a AT&T Wireless, NEW CINGULAR
     WIRELESS SERVICES PURCHASING
17   COMPANY, L.P., a Delaware limited
     partnership, d/b/a Cingular Wireless, and
18   NEW CINGULAR WIRELESS PCS, LLC, a
     Delaware limited liability company, d/b/a
19   Cingular Wireless,

20                      Defendants.

21

22         THIS MATTER comes before the Court on defendants' motion for summary

23   judgment, docket no. 152.  Having reviewed all papers filed in support of and in opposition

24   to the motion, including supplemental briefs filed in response to the Court's Minute Order

25   dated July 13, 2009, docket no. 165, the Court now enters the following order.

26

ORDER - 1

## Background

This putative class action was brought by Nathan Riensche against defendants Cingular Wireless LLC, New Cingular Wireless Services, Inc., New Cingular Wireless Services Purchasing Company, L.P., and New Cingular Wireless PCS, LLC ("Cingular Wireless"). The target of Riensche's various claims is Cingular Wireless's practice over a four-year period of passing along to its customers, as a "surcharge," the business and occupation ("B&O") tax assessed against the company by the State of Washington. In July 2006, Riensche filed this suit in King County Superior Court, alleging that Cingular Wireless breached its various service contracts and was unjustly enriched by collecting the B&O surcharge from customers. Counts I & IV of Complaint, Exh. A to Notice of Removal (docket no. 1). Riensche also alleged that Cingular Wireless violated Washington's Consumer Protection Act ("CPA") by failing to disclose and then collecting the B&O surcharge from customers. Count II of Complaint, Exh. A to Notice of Removal (docket no. 1). In addition, Riensche sought a declaratory judgment, *see* Count III of Complaint, Exh. A to Notice of Removal (docket no. 1), indicating that Cingular Wireless's past billing practices violated RCW 82.04.500, which provides:

> It is not the intention of this chapter that the taxes herein levied upon persons engaging in business be construed as taxes upon the purchasers or customers, but that such taxes shall be levied upon, and collectible from, the person engaging in the business activities herein designated and that such taxes shall constitute a part of the operating overhead of such persons.

The case was removed to federal court on preemption and diversity grounds. Notice of Removal (docket no. 1). Upon Cingular Wireless's motion under Rule 12(b)(6), the Court dismissed Riensche's third cause of action for declaratory judgment on the ground that RCW 82.04.500 is preempted by federal law. Order (docket no. 31). The Court later granted summary judgment in favor of Cingular Wireless on Riensche's other claims, holding that Riensche's breach of contract and unjust enrichment claims are barred by the voluntary payment doctrine and that Riensche's CPA claim lacks merit because Riensche cannot, as a

ORDER - 2

matter of law, prove Cingular Wireless engaged in an unfair or deceptive act or practice. Order (docket no. 133).

Riensche appealed the Court's dismissal of his declaratory judgment claim and the Court's grant of summary judgment on his breach of contract and CPA claims. Riensche, however, did not seek review of the Court's decision concerning his unjust enrichment claim, and thus, the Court's judgment against Riensche as to Count IV of the Complaint remains in full force and effect. *See* Memorandum at 2, Attachment to Mandate (docket no. 151); *see also* Judgment (docket no. 135). In light of its opinion in *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053 (9th Cir. 2008), the Ninth Circuit reversed the dismissal of Riensche's declaratory judgment claim, vacated the grant of summary judgment as to Riensche's breach of contract and CPA claims, and remanded the matter for further proceedings. Memorandum at 3, Attachment to Mandate (docket no. 151). Cingular Wireless now moves for summary judgment on Riensche's remaining claims.

**Discussion**

**A.  Summary Judgment Standard**

The Court should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When a properly supported motion for summary judgment has been presented, the adverse party "may not rely merely on allegations or denials in its own pleading," but rather must set forth "specific facts" demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). The nonmoving party is entitled to have all "justifiable inferences" favorably drawn. *Anderson*, 477 U.S. at 255. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the opposing

ORDER - 3

party, summary judgment is warranted.  *See* *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 932 (9th Cir. 2006); *see also* *Beard v. Banks*, 548 U.S. 521, 536 (2006).

## B. Breach of Contract Claim

On remand, Riensche has taken the position that the merits of his statutory claims are so clear the Court need not reach his breach of contract claim, and he has indicated a desire to voluntarily dismiss Count I of the Complaint.  *See* Response at 2 (docket no. 161). Riensche has not responded to Cingular Wireless's contentions that the voluntary payment doctrine precludes his breach of contract claim, that the 100-day contractual limitations period also bars his breach of contract claim,[1] or that his breach of contract claim lacks merit.[2]  The Court views the absence of opposition as a concession by Riensche that Cingular Wireless's arguments have merit.  *See* Local Rule CR 7(b)(2); *see also* Fed. R. Civ. P. 41(a) (indicating that voluntary dismissal without prejudice may not be effectuated absent court

---

[1] The contract at issue required Riensche to notify Cingular Wireless of any billing dispute, in writing, within 100 days of the date of the bill.  *See* Exh. A to Bennett Decl., Exh. 7 to Breskin Decl. (docket no. 59).  The limitations provision appears in all capital letters and further provides that failure to provide timely notice waives the right to dispute the bill or to bring any legal action.  *Id.*  On remand, Cingular Wireless has taken the position that the 100-day contractual limitations period bars all of Riensche's claims.  Riensche responds that the 100-day limit is unconscionable and unenforceable with respect to his non-contractual claims, but he does not dispute that compliance with the notice provision is a prerequisite to recovery on his breach of contract claim.  *See* *Oltman v. Holland Am. Line, Inc.*, 538 F.3d 1271 (9th Cir. 2008) (holding that a one-year limitations clause in a cruise contract was enforceable because it was "reasonably communicative," being *inter alia* in all capital letters and sufficiently conspicuous, and it was "fundamentally fair"); *see also* *Wothers v. Farmers Ins. Co.*, 101 Wn. App. 75, 79, 5 P.3d 719, 721 (2000) ("A contract limitation period prevails over the general statute of limitations unless prohibited by statute or public policy, or unless the provision is unreasonable."); *see also* *Syrett v. Reisner McEwin & Assoc.*, 107 Wn. App. 524, 530, 24 P.3d 1070, 1073 (2001) ("Washington cases have found contractual limitations on the time to bring suit ranging between three months and a year to be reasonable and not violative of public policy.").  Thus, the Court concludes that the 100-day notice requirement provides a basis in addition to the voluntary payment doctrine for dismissing Riensche's breach of contract claim.  The Court, however, makes no ruling concerning the applicability of the limitations period to Riensche's CPA or declaratory judgment claims.

[2] Cingular Wireless asserts that the contract at issue authorizes it to impose "network and other surcharges," as well as "applicable taxes and governmental fees, whether assessed directly upon [Riensche] or upon Cingular."  *See* Exh. A to Bennett Decl., Exh. 7 to Breskin Decl. (docket no. 59).  Riensche has offered no argument to the contrary.  The Court declines to address the merits of Cingular Wireless's contention, and instead holds that Riensche, through his current silence, is forever estopped from claiming that Cingular Wireless breached the terms of the contract at issue by including in Riensche's monthly bills, or collecting, a B&O surcharge.

ORDER - 4

1  order after the opposing party has served a motion for summary judgment).  The Court

2  therefore holds that Riensche's breach of contract claim is barred by the voluntary payment

3  doctrine,[3] and the Court DISMISSES Count I of the Complaint with prejudice.

4          C.       **Consumer Protection Act Claim**

5          To establish a violation of the CPA, a private plaintiff must prove:  (i) the defendant

6  engaged in an unfair or deceptive act or practice; (ii) such act or practice occurred within a

7  trade or business; (iii) such act or practice affected the public interest; (iv) the plaintiff

8  suffered an injury to his or her business or property; and (v) a causal relationship exists

9  between the defendant's act or practice and the plaintiff's injury.  *Robinson v. Avis Rent A*

10 *Car Sys., Inc.*, 106 Wn. App. 104, 113, 22 P.3d 818, 823 (2001).  A plaintiff can establish

11 that a trade practice is per se unfair or deceptive by showing it violates a regulation or statute

12 defining such practice as unfair or deceptive.  *See Hangman Ridge Training Stables, Inc. v.*

13 *Safeco Title Ins. Co.*, 105 Wn.2d 778, 786, 719 P.2d 531, 535 (1986); *see also Panag v.*

14 *Farmers Ins. Co.*, 166 Wn.2d 27, 37 n.3, 204 P.3d 885, 889 n.3 (2009).  In the alternative, a

15 plaintiff can demonstrate that a trade practice is unfair or deceptive by proving it had the

16 "capacity to deceive a substantial portion of the public."  *Hangman Ridge*, 105 Wn.2d at 785,

17 719 P.2d at 535.

18         In his Complaint, Riensche alleged that Cingular Wireless violated the CPA by

19 "failing to disclose, billing, and collecting" the B&O surcharge.  Complaint at ¶ 5.2, Exh. A

20 to Notice of Removal (docket no. 1).  In its previous Order, the Court dismissed this claim,

21 holding that Riensche failed to establish Cingular Wireless withheld information about the

22

23 _____

   [3] Cingular Wireless has conceded that the voluntary payment doctrine cannot be used as a defense to
24 Riensche's CPA claim.  *See* Order at 16 (docket no. 133); *see also Indoor Billboard / Wash., Inc. v. Integra*
   *Telecom of Wash., Inc.*, 162 Wn.2d 59, 86, 170 P.3d 10, 23-24 (2007) (expressly acknowledging the
   doctrine's relevance in the contract context, but declining to apply it to CPA claims).  In its reply brief,
25 Cingular Wireless for the first time argues that the voluntary payment doctrine precludes Riensche's
   declaratory judgment claim.  Riensche has moved to strike this portion of Cingular Wireless's reply.  The
26 Court agrees with Riensche that Cingular Wireless should have raised this issue earlier, and the Court
   declines to further address it.  Riensche's motion to strike, docket no. 164, is GRANTED.

ORDER - 5

B&O surcharge in a manner likely to deceive a substantial portion of the public. On remand,

Cingular Wireless repeats its earlier successful argument that it adequately disclosed the

B&O surcharge, and Riensche offers no substantive response. Instead, Riensche now

indicates that his CPA claim "does not depend on Cingular's 'disclosures,'" but rather is

based "upon the illegality of Cingular's billing practice." Response at 7 (docket no. 161).

The Court views Riensche's change in position as an admission that Cingular Wireless has

not violated the CPA by failing to disclose the B&O surcharge. *See* Local Rule CR 7(b)(2).

On remand, Riensche in essence claims that Cingular Wireless committed a per se

CPA violation by failing to comply with RCW 82.04.500. Contrary to Riensche's current

theory of the case, however, RCW 82.04.500 does not expressly establish as "unfair" or

"deceptive" the collecting of a B&O surcharge from customers and, to date, no Washington

court has recognized a per se CPA violation predicated on RCW 82.04.500. *See Johnson v.*

*Camp Auto., Inc.*, 148 Wn. App. 181, 185, 199 P.3d 491, 493 (2009). In *Hangman Ridge*,

the Washington Supreme Court made clear that "the Legislature, not this court, is the

appropriate body to . . . declar[e] a statutory violation to be a per se unfair trade practice."

105 Wn.2d at 787, 719 P.2d at 536. The *Hangman Ridge* Court enumerated several statutes

in which the legislature has explicitly indicated that a violation of the statute or related code

chapter constitutes an unfair or deceptive act or practice within the meaning of the CPA. *Id.*

at 786-87, 719 P.2d at 536.[4] Riensche offers no basis for concluding that the legislature has

---

[4] The statutes cited in the *Hangman Ridge* opinion all expressly link violation of the code chapter at issue
with the CPA, but they vary in ways that manifest the legislature's careful crafting of the overall CPA
scheme. *See* RCW 19.09.340 ("The commission by any person of an act or practice prohibited by this chapter
is hereby declared to be an unfair act or practice or unfair method of competition in the conduct of trade or
commerce for the purpose of application of the Consumer Protection Act . . . ."); RCW 19.105.500 ("For the
purposes of application of the consumer protection act . . . , any *material* violation of the provisions of this
chapter shall be construed to constitute an unfair or deceptive act or practice or unfair method of competition
in the conduct of trade or commerce." (emphasis added)); RCW 19.110.170 ("Any violation of this chapter is
declared to be an unfair act or practice or unfair method of competition in the conduct of trade or commerce
for the purpose of application of the Consumer Protection Act . . . ."); RCW 18.28.185 ("A violation of this
chapter constitutes an unfair or deceptive act or practice in the conduct of trade or commerce under chapter
19.86 RCW."); RCW 18.39.350 ("Any such violation [of this chapter] constitutes an unfair practice under
chapter 19.86 RCW and this chapter . . . ."); RCW 58.19.270 ("A violation of this chapter constitutes an

ORDER - 6

1  made any similar pronouncements concerning a violation of RCW 82.04.500 or its associated

2  code chapter or title, and the Court declines to treat any violation of the statute as a per se

3  unfair or deceptive practice.

4  Riensche also fails to explain how any violation of RCW 82.04.500 has the capacity

5  to deceive a substantial portion of the public. The statute announces a legislative intent that

6  B&O taxes be treated as overhead of a business, rather than as amounts separately levied

7  upon its customers. The statute, however, does not constrain a business from figuring into

8  the price of its goods or services a pro rata portion of its overhead, including the B&O tax.

9  Indeed, were RCW 82.04.500 interpreted to prevent businesses from recouping overhead,

10  most, if not all, businesses would flee from Washington, a result presumably not anticipated

11  by the legislature. Thus, Riensche does not and cannot contend that a business runs afoul of

12  the statute by embedding the B&O tax within its price and remaining silent about the

13  practice. The conclusion follows that customers are not deceived, but are rather better

14  informed, when a business instead discloses the portion of the price reflecting a share of the

15  B&O tax.

16  The case on which Riensche solely relies, *Nelson v. Appleway Chevrolet, Inc.*, 160

17  Wn.2d 173, 157 P.3d 847 (2007), does not compel a contrary result. In *Nelson*, the plaintiff

18  purchased a used car from the Appleway dealership. After negotiating the final price,

19  Appleway added a B&O tax of $79.23. The *Nelson* Court reasoned that "Appleway can

20  disclose or itemize costs associated with the purchased item, but unlike a sales tax, it cannot

21  add a B&O tax to the purchase price." *Id.* at 185, 157 P.3d at 853. As a result, the plaintiff

22  in *Nelson* was held entitled to a refund of $79.23 under an unjust enrichment theory. *Id.* at

23

24  unfair or deceptive act or practice or unfair method of competition in the conduct of trade or commerce *for
   the purpose of the attorney general bringing an action* in the name of the state under the consumer protection

25  act, pursuant to RCW 19.86.080." (emphasis added)); RCW 63.10.050 ("A violation of this chapter is an
   unfair or deceptive act or practice in trade or commerce and an unfair method of competition for the purpose

26  of applying the consumer protection act . . . ."); RCW 64.36.170 ("Any failure to comply with this chapter
   constitutes an unfair and deceptive trade practice under chapter 19.86 RCW.").

ORDER - 7

1   187-88, 157 P.3d at 854.  Nothing in the _Nelson_ decision, however, suggests that disclosure

2   of the B&O surcharge, whether included within or added to the final price, had the capacity

3   to deceive the plaintiff or the public.  _See id._ at 184, 157 P.3d at 852 ("The statute is silent

4   about disclosure, and Appleway is free to disclose and itemize any tax or cost.").  _Nelson_

5   simply does not support Riensche's claim that violation of RCW 82.04.500 constitutes an

6   unfair or deceptive trade practice within the meaning of the CPA.  The Court therefore

7   GRANTS summary judgment in favor of Cingular Wireless as to Riensche's CPA claim and

8   DISMISSES Count II of the Complaint with prejudice.

9                  **D.      Uniform Declaratory Judgments Act Claim**

10          The Uniform Declaratory Judgments Act ("UDJA") permits a court to "declare rights,

11   status and other legal relations whether or not further relief is or could be claimed."

12   RCW 7.24.010.  Under the UDJA, a person "whose rights, status or other legal relations are

13   affected by a statute" may seek a determination of "any question of construction or validity

14   arising under" such statute.  RCW 7.24.020.  In his claim for declaratory judgment, Riensche

15   asserts that Cingular Wireless's past billing practices violated RCW 82.04.500.  To obtain a

16   remedy under the UDJA, however, Riensche must assert "a legal right capable of judicial

17   protection which exists in a statute."  _See Washington Fed'n of State Employees v. State_

18   _Personnel Bd._, 23 Wn. App. 142, 148, 594 P.2d 1375, 1379 (1979).  In _Nelson_, the Supreme

19   Court declined to address whether RCW 82.04.500 grants any right or implied private right

20   of action for customers who wish to challenge B&O surcharges.  160 Wn.2d at 188, 157 P.3d

21   at 854.  The plaintiff in _Nelson_ did not pursue monetary relief under the UDJA, but rather

22   pleaded a separate action for restitution under an unjust enrichment theory, and the Supreme

23   Court was therefore not required to decide whether damages were available in connection

24   with a UDJA claim premised upon RCW 82.04.500.

25          Unlike in _Nelson_, in this case, no basis for relief other than the UDJA remains viable.

26   Riensche did not appeal the Court's earlier dismissal of his unjust enrichment claim, and the

ORDER - 8

1  Court has dismissed his breach of contract and CPA claims.  Moreover, unlike in *Nelson*, in

2  this case, in connection with his UDJA claim, Riensche seeks both monetary and injunctive[5]

3  remedies.  *See* Complaint at ¶¶ 6.2 & 6.3, Exh. A to Notice of Removal (docket no. 1).  In

4  light of the differences between *Nelson* and the present case, the Court previously requested

5  additional briefing concerning whether the question left open in *Nelson* must now be

6  decided.  In its supplemental brief, Cingular Wireless indicates that the issue can likewise be

7  avoided in this case because Riensche's interpretation of RCW 82.04.500 is incorrect and his

8  declaratory judgment claim therefore lacks merit.  Cingular Wireless cites for support a

9  recent Division III case, *Johnson v. Camp Auto., Inc.*, 148 Wn. App. 181, 199 P.3d 491

10  (2009), which held that a business may include a B&O tax or surcharge as a line item in the

11  price if the surcharge was revealed during negotiations.

12       In *Johnson*, as in *Nelson*, the plaintiffs purchased a vehicle from a dealership.  During

13  the course of negotiations, the salesperson used a "writeback" document, which listed *inter*

14  *alia* a B&O tax of $136.75 as part of the final price.  *Id.* at 183, 199 P.3d at 492.  The

15  writeback contained the following language: "I UNDERSTAND THE ABOVE FIGURES

16  HAVE BEEN NEGOTIATED."  *Id.*  The plaintiffs initialed the writeback, paid for and took

17  possession of their new truck, and subsequently sued the dealership, alleging violation of

18  RCW 82.04.500.  Division III found the case before it distinguishable from *Nelson* because

19  the dealership had disclosed the B&O surcharge during negotiations.  *Id.* at 185, 199 P.3d at

20  493.  The B&O surcharge was included within the final price and the dealership in *Johnson*

21  was held not to have violated RCW 82.04.500.

22

23  [5] In January 2006, Cingular Wireless ceased its B&O surcharge practice.  Hall Decl. at ¶ 6 (docket no. 44).
    Thus, Riensche's prayer for injunctive relief does not appear justiciable.  *See Coppernoll v. Reed*, 155 Wn.2d

24  290, 300, 119 P.3d 318, 323 (2005) ("Justiciability is a threshold inquiry and must be answered in the
    affirmative before a court may address the merits of a litigant's claim. . . . [T]o invoke the Uniform

25  Declaratory Judgments Act . . . , a plaintiff must establish: '(1) . . . an actual, present and existing dispute, or
    the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot

26  disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that
    must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial
    determination of which will be final and conclusive.'").

ORDER - 9

1   This case is factually more analogous to *Johnson* than to *Nelson*. As discussed in

2   more detail in the Court's earlier Order, docket no. 133, Riensche activated cellular

3   telephone service with Cingular Wireless via the Internet. During the process, he had an

4   opportunity to review the Wireless Service Agreement Rate Plan Terms & Conditions (the

5   "Service Agreement"), and he was required to click a dialogue box indicating his assent

6   thereto. The Service Agreement expressly provides that charges include "applicable taxes

7   and governmental fees, whether assessed directly upon you or upon Cingular." Exh. A to

8   Bennett Decl., Exh. 7 to Breskin Decl. (docket no. 59).

9       Moreover, during the relevant time frame, Cingular Wireless's brochures indicated

10  that the company imposed a "gross receipts surcharge," Exh. 13 to Breskin Decl. (docket

11  no. 59), and Cingular Wireless's web site contained the following explanation of such

12  surcharge: "A fee that Cingular Wireless assesses on the customer that allows it to recover

13  its costs with regard to specific government taxes imposed on the Company's gross receipts.

14  The Gross Receipts Surcharge is not a mandated charge to the customer." Bennett Decl. at

15  ¶¶ 3-5 & Exh. A (docket no. 87). The B&O surcharge appeared as a line item in the section

16  of the bill titled "Credits, Adjustments & Other Charges," which was separate from the

17  portion of the bill titled "Taxes." Exh. B to Hall Decl. (docket no. 44). Thus, as in *Johnson*,

18  in this case, the B&O surcharge was disclosed during the negotiation process,[6] and it was

19

20  _____

21  [6] To the extent that Riensche contends Cingular Wireless violated RCW 82.04.500 by not disclosing the exact
    amount it would charge each month, such argument runs contrary to previous decisions and common sense.

22  *See* Order at 20 n.10 (docket no. 133) ("The Court is well aware that tax rates, including the B&O rate,
    change from time to time, and the Court will not impose upon Cingular Wireless the unnecessary burden and
    expense of including, and continually updating, such rates in its advertising or its already lengthy standard

23  service agreement. Such rates, again including the B&O rate, are readily ascertainable."); *see also* *Smale v.*
    *Cellco Partnership*, 547 F. Supp. 2d 1181, 1187 (W.D. Wash. 2008) ("While a reasonable consumer might

24  wish to know more about the [City Tax] fee, Plaintiffs present no authority for the proposition that Verizon
    must provide that information as part of its consumer contract. Customers who contacted Verizon with

25  questions about the nature of the fee might have a claim if Verizon refused to provide such information or
    made misleading statements, but that is not the case before the court. . . . A retail receipt in Washington likely

26  assesses sales tax, but likely does not explain the system of varying rates and exemptions that underlies each
    assessment. . . . Common experience dictates that point-of-sale disclosure of the methodology for assessing

ORDER - 10

treated as part of the base amount charged to customers, rather than as a tax added to the final price. *Johnson* supports the conclusion that Cingular Wireless's past billing practice did not violate RCW 82.04.500, and such ruling is also consistent with *Nelson*, which prohibits only the appending of a previously undisclosed B&O surcharge to the final price. The Court therefore GRANTS summary judgment in favor of Cingular Wireless as to Riensche's UDJA claim and DISMISSES Count III of the Complaint with prejudice.

**Conclusion**

For the foregoing reasons, plaintiff's motion to strike, docket no. 164, is GRANTED, defendants' motion for summary judgment, docket no. 152, is GRANTED, and plaintiff's remaining claims are DISMISSED with prejudice. The Clerk is directed to enter judgment consistent with this Order and to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

DATED this 2nd day of October, 2009.

Thomas S. Zilly
United States District Judge

---

taxes and fees is the exception in a retail transaction."). Because Cingular Wireless is not required to disclose the rate or manner of computation, the conclusion follows that it is also not obligated to predict and then state months in advance the precise amounts of the variable B&O surcharges.

ORDER - 11